IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

RAMONTA WASHINGTON, o/b/o R.W., )
)
        Plaintiff,     )
)
vs. ) Case No. 05-1073-CV-W-ODS
)
JO ANNE BARNHART, )
Commissioner of Social Security, )
)
        Defendant.   )

## ORDER AND OPINION REVERSING COMMISSIONER'S FINAL DECISION AND REMANDING FOR RECONSIDERATION

The Commissioner found the claimant, R.W., to be disabled from December 15, 2001 through December 15, 2002. The determination that R.W. was disabled during this period is not challenged; the issue is whether R.W's disability (1) terminated on December 15, 2002 or (2) "reappeared" after that date. The Court concludes there is not substantial evidence in the Record to support the Commissioner's decision.

Plaintiff's claim arises from two discrete events. The first involves the effects of a house fire when Plaintiff was two years old. (Plaintiff was born in October 1999). The fire took place on December 15, 2001, while Plaintiff was inside the building. He was rendered unconscious due to smoke inhalation and apparently fell into a brief coma. He was hospitalized until January 31, 2002, and was diagnosed as having suffered anoxic encephalopathy (brain dysfunction caused by the failure of oxygen to be delivered to the brain). It is agreed by all concerned that this delayed Plaintiff's development such that he was disabled at least until December 15, 2002. It also seems to be agreed that, with time, Plaintiff's development would be expected to "catch up" to peers of his age. The critical question is whether this occurred by December 15, 2002.

Complicating matters is the second discrete event giving rise to Plaintiff's claim. In January 2004, Plaintiff was admitted to Children's Mercy Hospital with first and second degree burns on his arms, back and head. These burns were ultimately

determined to be the result of abuse inflicted by his father (who is now incarcerated). The Record reflects Plaintiff was abused on other occasions as well and was strongly coerced by his father into remaining silent or lying to hide the true nature of his injuries. To this day, Plaintiff still discusses the incidents involving his father on a regular basis. R. at 180, 309-14, 451-54.  In addition to whatever effect the abuse had on Plaintiff emotionally and mentally,[1] it interfered with his ability to go to school and receive the services contemplated by the second IEP in relation to his delayed development. Reports from the school also suggest a change in Plaintiff's behavior and demeanor after the last incident of abuse.  R. at 161, 174, 179-80.

The case must be remanded for reconsideration of the following matters:

1. Observations and opinions from educational personnel can provide evidence to establish an impairment.  20 C.F.R. § 404.1513(d)(2).  This leads to two observations. First, the Record may be incomplete; Plaintiff's counsel purportedly submitted a questionnaire prepared by his teacher of over two years and "37 pages of school records and reports of evaluations conducted during the period of July 16, 2002, through August 27, 2004."  R. at 173.  The questionnaire appears immediately following counsel's letter, but the additional records and reports described in the letter are not present at that location or, apparently, anywhere else in the Record.  Second, the ALJ did not address the educational information contained in the Record, including the teacher's questionnaire and Individualized Educational Plans ("IEPs") prepared in August 2003 and August 2004.  In these proceedings the Commissioner has attempted to find support for her final decision in those materials, but those materials also provide substantial support for concluding Plaintiff's disability was not alleviated on December 15, 2002.  Some, but not all of that support has been identified above.  It is the ALJ's duty to reconcile those conflicting statements in the first instance; the Commissioner cannot rely upon them *post hoc* to support her final decision.  Cf. Palavra v. INS, 287 F.3d 690, 693 (8th Cir. 2002) (citing Securities & Exchange Comn'n v. Chenery Corp., 318 U.S. 80, 95 (1943)).

---

[1] Physically speaking, Plaintiff fully recovered from the abuse.

2

Case 4:05-cv-01073-ODS   Document 10   Filed 05/09/06   Page 2 of 3

2. The ALJ failed to develop the Record insofar as the mental/emotional effects of the abuse are concerned. As noted, there are hints in the testimony and the school reports that Plaintiff continues to dwell on these events and they triggered changes in his behavior. The ALJ is obligated to obtain additional information when he determines he lacks sufficient information to evaluate the claimed disability. E.g., Tellez v. Barnhart, 403 F.3d 953, 956-57 (8th Cir. 2005); Snead v. Barnhart, 360 F.3d 834, 836-37 (8th Cir. 2004). The ALJ's statements confirm his belief that he lacked sufficient information to evaluate this matter.

> And I will again say, ma'am, get this kid some counseling, and if you get some reports reapply for benefits because, you know, we have to have a medically determinable impairment. And I have my own personal views on how this affected this kid, and my personal views are not worth a quarter. I need some, some medical records from an expert. And perhaps if you get those, that would make my job a lot easier in determining that this condition existed after 12/15/02.

R. at 461; see also R. at 450, 453-54. The Commissioner contends a consultative examination in the Record provided sufficient information. The easy response to this is: clearly, the ALJ did not think so. Moreover, review of the report in question reveals that it focused on the Plaintiff's development and not on the aftereffects of the abuse. R. at 332-34.[2]

For these reasons, the Commissioner's final decision is reversed and the case is remanded for further proceedings consistent with this Order and Opinion.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: May 9, 2006          UNITED STATES DISTRICT COURT

---

[2] The testifying medical expert conceded Plaintiff might suffer from post traumatic stress disorder, but would not expect the condition to be permanent. R. at 460. However, (1) a condition does not have to be permanent to be disabling, and (2) any such condition would have to be considered in concert with the residual effects of Plaintiff's delayed development.

3